1    COLLETTE C. LELAND, WSBA No. 40686
      DARREN M. DIGIACINTO, WSBA No. 39771
2    CASEY R. SIMMONS, WSBA No. 55986
      WINSTON & CASHATT, LAWYERS, P.S.
3    601 W. Riverside Ave., Ste. 1900
      Spokane, WA 99201
4    (509) 838-6131

5    Attorneys for Plaintiff, Sundance Slope, LLC

6

# UNITED STATES DISTRICT COURT

for the

**Eastern District of Washington**

| | |
|---|---|
| SUNDANCE SLOPE, LLC,<br>a Washington limited liability company,<br><br>                 Plaintiff,<br><br>   vs.<br><br>TROUT-BLUE CHELAN-MAGI, LLC,<br>a Washington limited liability<br>corporation; JOHN AND JANE DOES<br>1-20; and EDWARD JOHNSON, former<br>chief executive officer of Trout Blue<br>Chelan-Magi, Inc. and Trout-Blue<br>Chelan-Magi, LLC; WASHINGTON<br>ORCHARD MANAGEMENT, LLC, a<br>Delaware limited liability corporation,<br>registered to do business in Washington,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br><br>COMPLAINT FOR DAMAGES<br>AND FOR DECLARATORY<br>JUDGMENT<br><br>JURY TRIAL DEMANDED |

COMES NOW, Plaintiff, SUNDANCE SLOPE, LLC ("Sundance"), by and

through its undersigned attorneys of record, and allege as follows:

COMPLAINT FOR DAMAGES AND FOR
DECLARATORY JUDGMENT
PAGE 1

## I.    INTRODUCTION

1.1    Sundance is engaged in the business of orchard management, including growing, processing, and selling apples in interstate commerce.

1.2    In or about 2020, Sundance began growing the CN121 variety of apple, commonly known by its registered trademark, SugarBee, as its sole apple variety, converting, purchasing, and leasing acreage for the sole purpose of growing SugarBees.

1.3    Regal Fruit International LLC ("Regal Fruit") holds an exclusive license for the commercial propagation, distribution, and marketing of the SugarBee apple.

1.4    Regal Fruit entered a sublicense agreement ("SugarBee License") with Trout-Blue Chelan-Magi, Inc. d/b/a Chelan Fruit Cooperative, Inc. ("CFC") and with Gebbers Farms, Inc. ("Gebbers Farms") (collectively, "Licensees"), allowing the Licensees to enter sublicenses with growers.

1.5    CFC and Gebbers Farm agreed between themselves to limit the production of SugarBees to a total of 3,000 acres, at 1,452 SugarBee trees per acre.

1.6    Until December 2021, CFC was a cooperative association organized under chapter 23.86 RCW, of which Sundance was a member.

1.7    Through May 19, 2020, CFC, through its Board of Directors ("Board"), approved applications authorizing Sundance to obtain and grow a total of over

60,000 SugarBee trees and placed Sundance's application for an additional 101,750 Sugarbee trees on its waiting list, with knowledge that Sundance would grow SugarBees exclusively.

1.8    On or about December 15, 2021, CFC converted to an ordinary business corporation under RCW 23.86.210, through and merger and sale to an affiliate of International Farming Corporation, LLC ("IFC") ("Merger and Sale"); the resulting entity was Trout-Blue Chelan-Magi, LLC ("Chelan Fruit").

1.9    Sundance, through its manager, Troy Hawkins ("Hawkins"), had been openly critical of certain practices of CFC and its officers and directors, including self-dealing and decisions that benefited IFC or IFC's affiliates at the expense of CFC's member growers.

1.10   After the closing of the Merger and Sale, Chelan Fruit claimed that Sundance was in breach of Chelan Fruit's Sublicense and Lease Agreement ("Sublicense") because Sundance had not delivered 23.5 acres of an acceptable variety of fruit other than SugarBees to Chelan Fruit for packing and marketing. Chelan Fruit threatened Sundance with seizure of the SugarBees planted by Sundance as well as suit for patent infringement.

1.11   Sundance at no time agreed to modify the terms under which the Board approved Sundance to plant and grow SugarBees.

COMPLAINT FOR DAMAGES AND FOR
DECLARATORY JUDGMENT
PAGE 3

1.12    On or about April 25, 2022, Chelan Fruit canceled Sundance's pending order for approximately 26,670 SugarBee trees, plus additional trees to replace SugarBee trees previously approved by the Board, and directed Cameron Nursery, LLC to instead deliver to Defendant, Washington Orchard Management, LLC ("Washington Orchard"), a total of 28,500 SugarBee trees intended for Sundance.[1]

## II.    PARTIES

2.1    Plaintiff, Sundance, is a Washington limited liability company, registered to do business in Washington State, with its principal place of business in Chelan County, Washington.

2.2    Defendant Chelan Fruit is a Washington limited liability company, with its principal place of business in Chelan County, Washington.

2.3    Defendant, Edward Johnson ("Johnson"), is the former chief executive officer of Chelan Fruit, and the former CEO of CFC, a Washington corporation formed under RCW 23.86.

2.4    John and Jane Does 1-20 are certain current and former officers and directors of CFC and Chelan Fruit.

---

[1]Cameron Nursery had grown additional trees to replace trees planted in 2021 that had died during or shortly after planting.

COMPLAINT FOR DAMAGES AND FOR
DECLARATORY JUDGMENT
PAGE 4

2.5    Defendant, Washington Orchard, is a Delaware limited liability company registered to do business in Washington and an affiliate of IFC.

### III.    JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction under 28 U.S.C. §1331, and 28 U.S.C. §1332(a)(1) because Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

3.2    Venue is proper in the Eastern District of Washington under 28 U.S.C. §1391(b)(1) and (2).

### IV.    FACTS

**Sundance's Position on CFC's Relationship with IFC**

4.1    Hawkins served as a director on the Board from 2019 to 2020.

4.2    While Hawkins was on the Board, he advocated for investigations into officers and directors alleged to have engaged in self-dealing and breaches of their fiduciary duties, including certain transactions with IFC and its affiliates.

4.3    Hawkins was vocal in his opposition to CFC actions that favored non-members at the expense of member growers, including the Board's approval of non-member Washington Orchard's application to grow approximately 110,000 SugarBees under terms more favorable than those extended to many CFC members and the Board's decision to lease acreage, commonly known as Monument Hills Bolt-On Orchard, to Washington Orchard.

4.4    On or about July 15, 2021, Johnson disclosed to the CFC membership the then-proposed Merger and Sale to IFC.

4.5    Johnson notified CFC members that the sale to IFC would not close, and members would not receive equities owed by CFC, until and unless all members executed a broad waiver and release of known and unknown claims against CFC and IFC.

4.6    Neither Sundance nor its members or agents signed the waiver and release of claims.

4.7    Hawkins openly criticized CFC's lack of transparency regarding the proposed Sale and Merger and questioned how the new entity would administer CFC's rights under the SugarBee License.

4.8    The Sale and Merger closed on or about December 15, 2021.

**CFC's Management of its SugarBee Program**

4.9    CFC maintained a program pursuant to the SugarBee License ("SugarBee Program"), whereby the Board approved grower applications to plant or graft and grow SugarBees.

4.10    After the Board approved a grower's SugarBee application, CFC would notify Regal Fruit, so that Regal Fruit could direct its approved nursery to begin growing trees, or preparing grafts, for the approved grower.

4.11   The approved growers then contracted directly with Regal Fruit for the payment of royalties and contracted directly with the approved nursery for payment and delivery of the approved SugarBee trees or grafts.

4.12   Sometime after delivery of the SugarBee trees or grafts, CFC would send a Sublicense and Lease Agreement ("Sublicense") to the grower for execution.

4.13   The Sublicense purports to require all SugarBees grown under the Sublicense to be exclusively packed and marketed by CFC, pursuant to a Grower Marketing Contract.

4.14   The Grower Marketing Contracts were agreements between CFC, as a cooperative marketing association, on the one hand, and individual growers on the other, that set forth the terms under which the member-grower would sell identified fruit to CFC, including deductions for equity in the then-association and credits for patronage.

4.15   The Sublicense also provides at §7 a provision known as the Additional Acreage Requirement:

> As an additional inducement to Chelan Fruit to enter into this Agreement and provide Grower with access to the Licensed Variety, the Grower further agrees to sign a Grower Marketing Contract that not only covers the acreage planted with the Licensed Variety but also covers additional orchard acreage that is planted with a variety acceptable to Chelan Fruit. The additional acreage shall be at least equal to the acreage planted with the Licensed Variety. . .

> The additional acreage requirements identified above may be modified with the approval of Chelan Fruit's Board of Directors.

4.16   On October 31, 2019, the Board approved an application submitted by Washington Orchard, a subsidiary of IFC, for 110,000 SugarBee trees for delivery in 2020.

4.17   Washington Orchard was not processing any fruit through CFC at the time of its application.

4.18   Washington Orchard was not a member of CFC at the time its application was reviewed by the Board.

4.19   Washington Orchard was not then growing Sugar Bees and was unable to identify the proposed orchard location for planting as is typically required by CFC.

4.20   The Board discussed whether the application should be approved when Washington Orchard would not satisfy the Additional Acreage Requirement.

4.21   The Board approved Washington Orchard's application.

4.22   Hawkins dissented, and was critical of the Board's decision, because it favored a non-member grower at the expense of CFC members.

4.23   The Board approved Sundance's applications for SugarBees submitted in 2019 and 2020, totaling approximately 60,160 SugarBee trees, for delivery in 2020, 2021, and 2022.

4.24   During consideration of Sundance's applications, Hawkins represented to the Board that Sundance intended to grow only SugarBee apples and would grow

no other variety acceptable to CFC with which to meet the Additional Acreage Requirement.

4.25   The Board approved two Sundance applications on February 26, 2020, despite its knowledge that Sundance would not satisfy the Additional Acreage Requirement.

4.26   In reliance on the Board's approvals, Sundance leased acreage for the planting of the approved SugarBees and prepared those acres for planting.

4.27   In reliance on the Board's approvals, Sundance removed all other fruit from its orchards in the spring of 2020, except for cherry varieties which CFC had declined to pack and market.

4.28   After the Board approved Sundance's applications, Hawkins contracted with Willow Drive Nursery and ordered the approved number of SugarBee trees and grafts for planting in 2020.

4.29   After the SugarBee trees arrived, Sundance planted them in the prepared orchards, completing planting in the spring of 2020.

4.30   On or about October 8, 2020, Hawkins and CFC signed two Sublicenses covering 16,610 SugarBee trees Sundance had received and planted in the spring of 2020, understanding that pursuant to the Board's decision Sundance was not required to execute a Grower Marketing Agreement that would bind Sundance to meet the Additional Acreage Requirement.

1   4.31   On May 19, 2020, the Board considered an application by Sundance to

2   grow 43,560 SugarBees on 30 acres.

3   4.32   Hawkins again made clear to the Board that he intended to grow only

4   SugarBees and no other variety.

5   4.33   After discussing at length whether the application should be approved

6   in light of the fact that Sundance would not satisfy the Additional Acreage

7   Requirement, the Board approved Sundance for 17,923 SugarBee trees on 30 acres

8   for 2021, and for 40,000 trees when they became available, with Sundance to be

9   placed at the top of the SugarBee waiting list.[1]

10   4.34   After the Board approved Sundance's May Application, Regal Fruit

11   directed Cameron Nursery to designate and grow 26,670 trees for Sundance.

12   4.35   Cameron Nursery provided an executed contract to Sundance on or

13   about July 20, 2020, establishing the terms of the contract whereby Cameron

14   Nursery would grow 26,670 SugarBee trees for Sundance for planting in the spring

15   of 2022, which Sundance executed and returned.

16   4.36   Sundance had asked Regal Fruit to obtain additional trees to replace

17   SugarBee trees that had died during the 2021 planting and shortly thereafter,

18

19

20

---

[1] Sundance is currently first or second on the waiting list for 100,750 SugarBees.

COMPLAINT FOR DAMAGES AND FOR
DECLARATORY JUDGMENT
PAGE 10

1    bringing the total number of SugarBee trees to be delivered to Sundance in spring
2    2022 to approximately 28,500.

3        4.37   While the 28,500 SugarBee trees were growing, Regal Fruit
4    periodically sent photographs of Sundance's trees to Hawkins for his review.

5        4.38   In reliance on the Board's approval of its applications to grow
6    SugarBees with knowledge that Sundance would not satisfy the Additional Acreage
7    Requirement, Sundance purchased additional acreage for planting; Sundance cleared
8    the acreage of mature Honey Crisp trees and prepared the acreage to plant the 28,500
9    SugarBee trees.

10       4.39   On or about July 15, 2021, CFC disclosed to its members that the Board
11   voted to approve a proposed sale of assets of CFC to a newly formed entity created
12   with IFC.

13       4.40   The Merger and Sale was material to Sundance's decision to plant, graft
14   and/or grow SugarBees.

15       4.41   IFC and its affiliates, including Washington Orchard, were business
16   competitors of Sundance and other SugarBee growers.

17       4.42   Prior to the announcement of the proposed Merger and Sale, CFC
18   informed the growers that CFC's SugarBee allocation reached its limit, and that
19   further approved applicants would be placed on a waiting list.

20

COMPLAINT FOR DAMAGES AND FOR
DECLARATORY JUDGMENT
PAGE 11

4.43   Sundance and other SugarBee growers were concerned that IFC, through the resulting entity, would try to expand the number of SugarBee trees, which would potentially reduce profitability for smaller growers.

4.44   Sundance and other SugarBee growers were concerned that IFC, through the resulting entity, would administer the SugarBee Program in a manner that favored IFC at the expense of CFC's member-growers.

4.45   Sundance and other growers were concerned that IFC, through the resulting entity, would choose to interpret or potentially change the Additional Acreage Requirement in a manner that was disadvantageous to existing SugarBee growers.

4.46   CFC did not timely disclose information about the pending Merger and Sale.

4.47   On September 1, 2021, CFC forwarded to Sundance a blank Sublicense that did not include the number of trees or acreage purported to be governed by the Sublicense.

4.48   Sundance notified CFC by letter that Sundance viewed the proposed Merger and Sale as a material change in circumstances, in part because the 3,000-acre limitation on SugarBee production was material to Sundance accepting and signing the Sublicenses for SugarBee trees delivered and planted in 2020.

COMPLAINT FOR DAMAGES AND FOR
DECLARATIVE JUDGMENT
PAGE 12

4.49   Nonetheless, Sundance advised that it would comply with the terms of the Sublicense as approved by the Board.

4.50   The Merger and Sale closed on or about December 15, 2021, resulting in a new for-profit limited liability company, Chelan Fruit, that was no longer a grower association or cooperative marketing association.

4.51   CFC and IFC represented to CFC member growers that all members who qualified as accredited investors would be entitled to acquire shares in IFC affiliate, IFC PNW Tree Fruit Holdings, LLC ("IFC PNW").

4.52   Although Sundance is a qualified investor and timely submitted its indication of interest, no subscription materials were provided to Sundance.

4.53   On information and belief, IFC and Chelan Fruit desired to prevent Sundance from becoming a shareholder in IFC PNW.

4.54   Following the failure to deliver subscription materials, Chelan Fruit, Johnson, and John and Jane Does 1-10, engaged in efforts to coerce and intimidate Sundance into agreeing to meet the Additional Acreage Requirements.

4.55   By letter dated March 10, 2022, Chelan Fruit, through its counsel, charged Sundance with violating the Sublicense and claimed Sundance must farm an additional 23.5 acres with a different variety to meet the Additional Acreage Requirement, despite the Board's approval of Sundance's applications with knowledge of Sundance's intent to grow only SugarBees.

4.56   In its March 10, 2022 letter, Chelan Fruit demanded that Sundance sign the Sublicense and also provide an accounting of all inventories of harvested fruit for the purpose of curing Sundance's "violation" of the Additional Acreage Requirement.

4.57   In the March 10, 2022 letter, Chelan Fruit represented that it had the right to: prohibit Sundance from growing SugarBees; seek treble damages for alleged infringement of Chelan Fruit's alleged intellectual property rights in the SugarBee variety; and remove the SugarBees from Sundance's orchards.

4.58   Upon information and belief, Chelan Fruit misrepresented its legal rights under its SugarBee License, as well as under the Sublicense and Grower Marketing Contract, in an attempt to coerce Sundance into entering an agreement that would impose the Additional Acreage Requirement on Sundance despite the Board's modification of the same.

4.59   The Board has not required certain other growers, including Washington Orchard, to comply with the Additional Acreage Requirement.

4.60   Board members have interpreted the Additional Acreage Requirement as applying only to the extent that the grower is already growing acreage of an acceptable variety, and not as requiring approved SugarBee growers to plant, lease or purchase additional acreage for the sole purpose of satisfying the Additional Acreage Requirement.

4.61    Nonetheless, Chelan Fruit threatened that if Sundance did not comply with its demands, it would enter Sundance's orchards and remove its trees, commence litigation, and seek treble damages.

4.62    Chelan Fruit copied Cameron Nursery and Jared England of Manson Growers on the March 10, 2022 letter.

4.63    Cameron Nursery and Sundance entered a contract for the delivery of approximately 26,670 SugarBees for the 2022 growing season.

4.64    Upon information and belief, the March 10, 2022 letter was sent to Cameron Nursery for the purpose of discouraging Cameron Nursery from fulfilling Sundance's pending order for the 26,670 SugarBees.

4.65    Manson Growers is affiliated with the lessor of acreage leased by Sundance for the purpose of growing SugarBees.

4.66    Upon information and belief, Chelan Fruit copied Mr. England on the March 10, 2022 letter for the purposes of interfering with Sundance's relationship with its lessor.

4.67    In response to the March 10, 2022 letter, Hawkins contacted Chelan Fruit, affirmed his willingness to abide by the sublicense terms as modified by the Board's waiver of the Additional Acreage Requirement, and requested documentation relating to Sundance's applications and the Board's approvals of the same.

4.68   Chelan Fruit provided a single excerpt of the May 19, 2020 board meeting and provided no other documentation requested.

4.69   Sundance made an additional request on or about April 4, 2022, asking Chelan Fruit to deliver or make available full Board meeting minutes for those meetings during which Sundance's applications were approved, all notes of those meetings, and the audio recording of each meeting.

4.70   To date, Chelan Fruit provided none of the requested information.

4.71   On April 15, 2022, Chelan Fruit presented a "Side Letter to Sublicense and Lease Agreement" to Hawkins, under which Chelan Fruit would agree to recognize the Board's approval of Sundance's plan to grow only SugarBees until such time as Chelan Fruit should send a notice that it has terminated the Side Letter and unilaterally revoked the Board's approval.

4.72   Sundance did not agree to this modification to the Board's decision.

4.73   On April 25, 2022, Chelan Fruit, via Johnson, presented another proposed Side Letter to Hawkins in person.

4.74   The April 25, 2022 Side Letter proposed to abide by the Board's decision only as to those trees that Sundance already planted, and required a writing signed by Chelan Fruit for any relief from the Additional Acreage Requirement as to future SugarBee trees or grafts, despite the prior approvals by the Board with knowledge that Sundance would grow only SugarBees.

4.75   On or about April 25, 2022, Chelan Fruit contacted Cameron Nursery and canceled Sundance's pending order for the approximately 26,670 SugarBee trees that were waiting for Hawkins' inspection and subsequent delivery to Sundance for planting.

4.76   Chelan Fruit did not notify Sundance that it canceled Sundance's contract with Cameron Nursery or that it intended to, despite the ongoing discussions between Sundance and Chelan Fruit regarding the Additional Acreage Requirement.

4.77   Hawkins learned of the cancelation when he called Cameron Nursery to arrange for the inspection of Sundance's SugarBees which were scheduled to be ready for delivery.

4.78   Cameron Nursery informed Hawkins that Chelan Fruit canceled the order for the 26,670 SugarBees and directed Cameron Nursery to deliver the trees to IFC instead.

4.79   A total of approximately 28,500 SugarBee trees grown for Sundance were delivered to IFC's affiliate Washington Orchard at Monument Hills Bolt-One, depriving Sundance of the 26,760 SugarBee trees that were the subject of its contracts with Cameron Nursery and Regal Fruit, and the trees grown to replace the SugarBee trees from the 2021 planting that had died.

4.80   Upon information and belief, Johnson, together with then-director Allen Robison, then-chief financial officer Todd Kammers, and certain unknown

John and Jane Does, determined Chelan Fruit should divert the 28,500 SugarBees approved and grown for Sundance to Washington Orchard.

## V.    FIRST CLAIM FOR RELIEF: TORTIOUS INTERFERENCE WITH A CONTRACT OR, IN THE ALTERNATIVE, TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY (All Defendants)

5.1    Paragraphs 1.1 through 4.80 are incorporated as if fully restated herein.

5.2    Sundance was a party to a valid contract with Cameron Nursery for the delivery of 26,670 SugarBee trees.

5.3    In the alternative, at the time of the conduct at issue, Sundance had a business expectancy with a probability of future economic benefit to Sundance arising from the growth, harvesting and sale of fruit from the 28,500 SugarBee trees.

5.4    Defendants had knowledge of this contract and/or business expectancy.

5.5    Defendants intentionally prevented the performance or caused the breach of the contract by Cameron Nursery, or alternatively caused or induced the termination of the business expectancy.

5.6    Defendants' interference was for an improper purpose, including without limitation,

(a)    retaliation against Hawkins and Sundance,

(b)    profiting Chelan Fruit and Washington Orchard Management at the expense of Sundance,

     (c)     attempting to coerce or intimidate Sundance into entering a marketing contract with Chelan Fruit for additional acreage,

     (d)     depriving Sundance of SugarBee trees and the profits therefrom, and

     (e)     seeking to use the incident as a means to intimidate other growers.

     5.7     The interference was by improper means, in that Defendants:

     (a)     rescinded the decisions of the CFC Board without proper authority,

     (b)     the interference was part of a pattern of coercion and intimidation against Sundance for the purpose of forcing Sundance to enter a contract that would modify the terms under which Sundance's applications to grow SugarBees were previously approved by the Board,

     (c)     the interference circumvented the Board's process for allocating SugarBee trees to approved growers,

     (d)     Defendants' actions violated chapter 15.83 RCW,

     (e)     the interference was not validly authorized by the legal owner of the 28,500 trees, Regal Fruit.

     5.8     The Defendants' conduct was the proximate cause of damages to Sundance, including without limitation, costs of preparing acreage for planting of

COMPLAINT FOR DAMAGES AND FOR
DECLARATORY JUDGMENT
PAGE 19

1   the 28,500 trees, lost profits, land acquisition, payment for the replacement trees,

2   and opportunity cost.

3   **VI.   SECOND   CLAIM   FOR   RELIEF:   VIOLATION   OF**
    **AGRICULTURE MARKETING ACT (Chelan Fruit and Washington**
4   **Orchard)**

5   6.1   Paragraphs 1.1 through 5.8 are incorporated as if fully restated herein.

6   6.2   Chelan Fruit is a handler for purposes of RCW 15.83.030.

7   6.3   Alternatively, Chelan Fruit continues to operate as an association for

8   purposes of RCW 15.83.040.

9   6.4   Chelan Fruit attempted to coerce and intimidate Sundance regarding the

10  exercise of its right to contract with or refrain from contracting with Chelan Fruit in

11  violation so RCW 15.83.030(2).

12  6.5   Chelan Fruit coerced and intimidated Sundance to enter or maintain a

13  marketing contract in violation so RCW 15.83.030(4) or 15.83.040(4).

14  6.6   Washington Orchard conspired, agreed, or arranged with Chelan Fruit

15  to aid and abet Chelan Fruit's intimidation and coercion of Sundance by accepting

16  the 28,500 SugarBee trees in violation of RCW 15.83.030(7) and/or RCW

17  15.83.040(5).

18  6.7   Johnson conspired, agreed, or arranged with Chelan Fruit to aid and

19  abet Chelan Fruit's intimidation and coercion of Sundance by directing that the

20

28,500 SugarBee trees be delivered to Washington Orchard Management in violation of RCW 15.83.030(7) and/or RCW 15.83.040(5).

6.8     Sundance was injured in its business and property by reason of the violations of chapter 15.83 RCW by Washington Orchard and Chelan Fruit.

6.9     Sundance is entitled to an award of damages, injunctive relief and recovery of its reasonable attorney's fees and costs of bringing suit.

## VII.   THIRD CLAIM FOR RELIEF: UNFAIR TRADE PRACTICES AFFECTING PRODUCERS OF AGRIGULTURAL PRODUCTS (Chelan Fruit, Washington Orchard, Johnson )

7.1     Paragraphs 1.1 through 6.9 are incorporated as if fully restated herein.

7.2     Chelan Fruit is a handler under 7 U.S.C. §2302.

7.3     Sundance is a producer as defined by 7 U.S.C. §2302.

7.4     Chelan Fruit has coerced and intimidated Sundance to enter or maintain a marketing contract with Chelan Fruit.

7.5     Washington Orchard conspired, agreed, or arranged with Chelan Fruit to aid and abet Chelan Fruit's intimidation and coercion of Sundance by accepting the 28,500 SugarBee trees in violation of 7 U.S.C. §2303.

7.6     Johnson conspired, agreed, or arranged with Chelan Fruit to aid and abet Chelan Fruit's intimidation and coercion of Sundance by directing that the

28,500 SugarBee trees be delivered to Washington Orchard in violation of 7 U.S.C §2303.

7.7    Sundance was injured in its business and property by reason of the violations of the Unfair Trade Practices Affecting Producers of Agricultural Products Act.

7.8    Sundance is entitled to an award of damages, injunctive relief and recovery of its reasonable attorney's fees and costs of bringing suit.

## VIII. FOURTH CLAIM FOR RELIEF: REQUEST FOR DECLARATORY JUDGMENT (Chelan Fruit)

8.1    Paragraphs 1.1 through 7.8 are incorporated as if fully restated herein.

8.2    A justiciable controversy exists between Sundance and Chelan Fruit because there is a current dispute concerning the enforceability and interpretation of §7 of the Sublicense as applied to Sundance.

8.3    Chelan Fruit and Sundance have genuine opposing interests that are direct and substantial.

8.4    The conversion of CFC to a new ordinary business entity rendered its marketing agreements with its grower members, including the Grower Marketing Contract and the marketing provisions of the Sublicense, invalid.

8.5    Even if valid, §7 of the Sublicense should be construed to apply the Additional Acreage Requirement only to additional acreage of an acceptable variety existing at the time of contracting.

8.6    The Board's decision to approve an application to plant and grow SugarBee trees and/or grafts with knowledge that the grower intends to grow SugarBees exclusively modifies §7, such that said grower is not bound by the Additional Acreage Requirement.

8.7    Sundance invested substantial sums in reliance on Chelan Fruit interpreting and enforcing §7 of the Sublicense consistent with the Board's decisions granting Sundance's applications for SugarBee trees with knowledge that Sundance intended to grow only SugarBees.

8.8    Sundance stands to receive substantial revenue through the marketing and sale of SugarBees after its trees become mature enough to produce fruit.

8.9    Judicial determination of whether, notwithstanding the Board's decisions, Sundance must plant and grow a number of acres of another variety that is equal to the acres on which Sundance grows SugarBees will be final and conclusive.

8.10    Sundance therefore asks this Court to enter declaratory judgment ruling that Sundance is not in violation of §7 of the Sublicense, and that, as to those trees that are the subject of any and all Sundance applications approved by the Board or placed on Chelan Fruit's waiting list, Sundance is not required to plant additional acres to meet the one-to-one requirement.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For damages in an amount to be proven at trial;

2.    For a declaration that Sundance is not in breach of the Sublicense and that Sundance shall not be required to grow acres of another variety equal to the acres of SugarBees that the Board approved Sundance to grow;

3.    For injunctive relief as may be appropriate under 7 U.S.C. §2305(a), including an order prohibiting Defendants from damaging Sundance's existing SugarBees and from interfering in any way with Sundance's growth of any and all SugarBees approved by the Board;

4.    For all reasonable attorney's fees and costs allowed by law or under contract, including §17 of the Sublicense Agreement, 7 U.S.C. §2305, and RCW 15.83.070;

5.    For leave to amend this Complaint as appropriate; and

6.    All other relief this Court deems just and equitable.

## X. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify that to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a

1  nonfrivolous argument for extending, modifying, or reversing existing law; (3) the

2  factual contentions have evidentiary support or, if specifically so identified, will

3  likely have evidentiary support after a reasonable opportunity for further

4  investigation or discovery; and (4) the complaint otherwise complies with the

5  requirements of Rule 11.

6      Date: <u>March 24, 2023</u>.

7

8  COLLETTE C. LELAND, WSBA No. 40686
   DARREN M. DIGIACINTO, WSBA No. 39771
9  CASEY R. SIMMONS, WSBA No. 55986
   WINSTON & CASHATT, LAWYERS, P.S.
10 601 W. Riverside Ave., Ste. 1900
   Spokane, WA 99201
11 (509) 838-6131
   ccl@winstoncashatt.com
12 dmd@winstoncashatt.com
   crs@winstoncashatt.com
13 Attorneys for Plaintiff, Sundance Slope, LLC

14

15

16

17

18

19

20